UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In Re NATURAL GAS COMMODITY LITIGATION | : : : : | 03 Civ. 6186 (VM)(AJP) **OPINION AND ORDER** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Chief Magistrate Judge:**

      Plaintiffs, natural gas futures traders, have moved to compel production of three privileged pages inadvertently produced in discovery by defendant AEP. (5/2/05 Plfs. Letter Br. at 14-17.) The Court previously denied plaintiffs' motion to compel production of these and additional documents, holding that defendants AEP and Aquila's disclosure of privileged documents to governmental agencies did not waive their work product and attorney-client privileges in this case. See In re Natural Gas Commodity Litig., 00 Civ. 6186, 2005 WL 1457666 (S.D.N.Y. June 21, 2005) (Peck, M.J.), familiarity with which is assumed.

      Presently before the Court is the issue of whether AEP waived its privilege for these three privileged pages through "inadvertent production." For the reasons set forth below, plaintiffs' motion is DENIED.

## FACTS

### AEP's Document Review and Production to Plaintiffs

On October 4, 2004, AEP served its objections to Plaintiffs' Second Consolidated Request for Documents, objecting to, inter alia, production of any privileged documents. (5/16/05 Wolinsky Aff. ("Wolinsky Aff. I") ¶ 8 & Ex. 1: AEP Response to Plaintiffs' Second Consolidated Request for Documents, "General Objections" ¶ 3.)[1]

To respond to plaintiffs' Second Request for Documents, on or about October 27, 2004 AEP counsel Hogan & Hartson reviewed 140,000 pages of documents which AEP previously had produced to governmental agencies. (Wolinsky Aff. I ¶ 2.) Hogan & Hartson determined that approximately 65,000 pages should be produced to plaintiffs. (Wolinsky Aff. I ¶ 6; Dkt. No. 278: 5/23/05 Wolinsky Aff. ("Wolinsky Aff. II") ¶ 2.) These 65,000 pages were the product of two "page-by-page" document reviews by "experienced" attorneys during which Hogan & Hartson excluded from production non-responsive and/or privileged documents. (Wolinsky Aff. I ¶ 3; Wolinsky Aff. II ¶¶ 2-3.) During the second document review, Hogan & Hartson also identified documents to be produced that needed to be labeled "Confidential" or "Restricted Confidential" pursuant to the Protective Order in this case. (Wolinsky Aff. I ¶ 3.) A legal assistant made a list of all documents that were to be labeled in this manner. (Wolinsky Aff. I ¶ 5.) After the second round of document

---

[1] AEP's objection also asserted that "[t]he inadvertent production of any privileged document is not a waiver of AEP's right to assert any applicable privilege with respect to any such document or matter." (Id.) The parties have not addressed whether this assertion should have any significance on this motion, and the Court therefore gives it the same attention as the parties – none.

review was complete, the non-responsive and privileged documents were removed from the room in which the responsive documents were kept at Hogan & Hartson's Washington D.C. office. (Wolinsky Aff. I ¶ 4; Wolinsky Aff. II ¶ 3.)

In November 2004, plaintiffs' counsel conducted an initial review of the 65,000 pages of documents at the Hogan & Hartson office to determine which documents they wanted to copy for use in the litigation. (Wolinsky Aff. I ¶ 6.) AEP and plaintiffs had agreed that AEP would not actually label any documents "Restricted Confidential" until after plaintiffs selected the documents they wanted copied. (Wolinsky Aff. I ¶¶ 5-6.)

After plaintiffs had completed their review of the documents, plaintiffs requested that all 65,000 pages be sent to an outside copy service. (Wolinsky Aff. I ¶ 6; Wolinsky Aff. II ¶ 3.) On November 4, 2005, AEP sent the documents to the copy service and provided the copy service with the list of documents to be labeled "Restricted Confidential." (Wolinsky Aff. I ¶ 6.)[2/]

After the documents had been sent to the copy service, but before any documents were copied, Hogan & Hartson reviewed their index of categories of documents – listed by the Bates Number from AEP's earlier production to the governmental agencies (see Wolinsky Aff. I Ex. 2) – that they had produced. (Wolinsky Aff. II ¶ 5.) Counsel's review of the index caused it to believe that certain documents which had been made available to plaintiffs, and therefore were at the copy

---

[2/] Supplemental document productions were made by AEP in December 2004, January 2005 and March 2005. (Wolinsky Aff. I ¶ 7.) These supplemental productions included 27 CD-ROMS and 1000 pages of documents, all of which were produced after "comprehensive review" similar to that described above. (Wolinsky Aff. I ¶ 7.) These later productions are not involved in this motion.

service, might not actually be responsive to plaintiffs' complaint and document requests. (Wolinsky Aff. II ¶ 5.) On November 5, 2004, one day after the documents had been delivered to the copy service, Hogan & Hartson procured the return of those potentially non-responsive documents from the copy service before any documents were copied. (<u>Id</u>.) Upon receipt of these returned documents, Hogan & Hartson again reviewed them and concluded that some of those documents were not responsive, and notified plaintiffs by letter dated November 12, 2004 of its withdrawal of those documents. (Wolinsky Aff. II ¶ 6.) Others of the pulled documents were determined to be responsive and were returned to the copy service. (<u>Id</u>.)

Under the index system used by Hogan & Hartson, when counsel reviewed the group-index of documents provided to the copy service, they could not tell that the three privileged pages at issue had been inadvertently produced and remained at the copy service. (Wolinsky Aff. II ¶ 5.) According to Wolinsky, the three privileged pages had been "appropriately identified as privileged/protected and included on [AEP's] privilege log but that inadvertently were allowed to remain among the 65,000 pages made available for Plaintiffs' review and included on a list of documents to be labeled 'Restricted Confidential.'" (Wolinsky Aff. II ¶ 4.) The review of the index did not enable Hogan & Hartson to learn that the three privileged pages erroneously had been produced. (Wolinsky Aff. II ¶¶ 4-5.)

On November 12, 2004, Hogan & Hartson provided a list to plaintiffs of the documents, listed by Bates Number, that were going to be labeled "Restricted Confidential." (Wolinsky Aff. II ¶ 7.) Hogan & Hartson had re-reviewed this list (but not the documents), but only

to determine whether any of the non-responsive documents that it had withdrawn were on it.  (Id.)

According to AEP attorney Robert Wolinsky, "neither that index nor other such documentation

available to us allowed me or the legal assistant working with me to see that three pages of

privileged/protected documents had inadvertently been allowed to remain among the 65,000 pages

sent to the copy vendor."  (Wolinsky Aff. II ¶ 5.)  This newly-reviewed list of documents to be

labeled "Restricted Confidential" continued to include the three privileged pages. (Wolinsky Aff. II

¶ 8; see 5/2/05 Plfs. Letter Br. Ex. I: 11/12/04 Hogan & Hartson letter enclosing "Index of AEP

Restricted Confidential Documents.")

Two of the three privileged pages at issue are Bates numbered consecutive to the

documents that AEP withdrew from the copy service as non-responsive.  (Wolinsky Aff. II ¶ 9; see

5/2/05 Plfs. Letter Br. Ex. I: 11/12/04 Letter and "Index of AEP Restricted Confidential

Documents.")[3/]  Plaintiffs argue that because of the Bates number proximity, Hogan & Hartson

should have realized the inadvertent production upon their review and re-review of the non-

responsive documents and that Hogan & Hartson's failure to do so waived the privilege.  (5/2/05

Plfs. Letter Br. at 16.)  AEP responds that the numbering is "purely a matter of coincidence."

(Wolinsky Aff. II ¶ 9.)  Wolinsky explains that due to the large number of documents which AEP

produced to the governmental agencies and now to plaintiffs in this litigation, Hogan & Hartson does

---

[3/]      The documents at issue here:  AEP056073 ("Comparison of Average System and Reported
Price"), AEP056074 ("Comparison of Company's Net Position"), AEP055654 ("Comparison
of System and Reported Volume").  (Wolinsky Aff. I ¶¶ 11, 18.)  It is not disputed for
purposes of this motion that the documents are covered by the attorney-client and/or work
product privilege, subject only to the issue of waiver by production.

not maintain "a detailed, page-by-page descriptive index of all the documents" but rather an "attorney work product index that provides a general description of the categories of documents in each Bates label range." (Id.) The two pages at issue were not indexed with the withdrawn non-responsive documents and, despite the proximity in Bates numbers, Hogan & Hartson did not realize the inadvertent production. (Id.)

## Discovery of the Production of the Three Pages at Issue

AEP did not discover its inadvertent production of any privileged material until April 11, 2005, when plaintiffs' counsel contacted AEP attorney Robert Wolinsky regarding two pages – AEP0056073-74. (Wolinsky Aff. I ¶ 11; 5/2/05 Plfs. Letter Br. at 16.) Wolinsky responded on that same day by telephone and in a follow-up letter, asserting that the pages were privileged and requesting their return. (See Wolinsky Aff. I ¶¶ 11-12 & Ex. 2: 4/11/05 Wolinsky Letter.) Wolinsky's letter pointed out that the two pages were marked "Privileged and Confidential: Attorney Work Product" prior to their inadvertent production, and also appeared on AEP's privilege log. (Wolinsky Aff. I ¶¶ 11-12.)

After plaintiffs refused to return the documents, the Court ordered plaintiffs' counsel to seal them in an envelope to be held by plaintiffs' counsel pending judicial resolution of this issue. (Wolinsky Aff. I Ex. 5: 4/15/05 Conf. Tr. at 21.)

On April 29, 2005, AEP learned from plaintiffs of the production of the third page at issue, AEP0055654. (Wolinsky Aff. I ¶ 18 & Ex. 6: 4/29/05 Briskin & Wolinsky emails.) Wolinsky immediately responded via email, asserting work product privilege and requested the

document's immediate return. (Id.) This third document also was marked "Privileged and Confidential: Attorney Work Product" prior to its inadvertent production. (Wolinsky Aff. I ¶ 18.)

## ANALYSIS

## I.    THE APPLICABLE LEGAL STANDARD

"As a general rule, the voluntary production of a privileged document waives any claim of privilege with respect to that document." United States v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003).[4/] When a party inadvertently discloses privileged material, however, the privilege will not be deemed waived "'unless the conduct of the producing party or its counsel evinced such extreme carelessness as to suggest that it was not concerned with the protection of the privilege.'" Stoner v. New York City Ballet Co., 99 Civ. 0196, 2002 WL 31875404 at *2 (S.D.N.Y. Dec. 24, 2002).[5/] "Although this rule recognizes that mistakes will be made given 'the realities of the discovery process in complex litigation,' it also creates an incentive for counsel to guard the privilege closely, as the failure to take reasonable precautions will result in a waiver." United States v. Gangi, 1 F. Supp. 2d at 264 (citations omitted).

---

[4/]    Accord, e.g., Johnson v. Sea-Land Serv., Inc., 99 Civ. 9161, 2001 WL 897185 at *5 (S.D.N.Y. Aug. 9, 2001); United States v. Gangi, 1 F. Supp. 2d 256, 263 (S.D.N.Y. 1998); Aramony v. United Way of America, 969 F. Supp. 226, 235 (S.D.N.Y. 1997); Carter v. Rosenberg & Estis, P.C., 95 Civ. 10439, 1996 WL 695866 at *2 (S.D.N.Y. Dec. 4, 1996) (citing In re Von Bulow, 828 F.2d 94, 101 (2d Cir. 1987)).

[5/]    Accord, e.g., Johnson v. Sea-Land Serv., Inc., 2001 WL 897185 at *5; SEC v. Cassano, 189 F.R.D. 83, 85 (S.D.N.Y. 1999); Aramony v. United Way of America, 969 F. Supp. at 235.

To determine whether an inadvertent disclosure waived the privilege, courts in this Circuit balance four factors:[6/] "[1] the reasonableness of the precautions to prevent inadvertent disclosure, [2] the time taken to rectify the error, [3] the scope of the discovery and the extent of the disclosure . . . [and 4] overreaching issues of fairness." Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985); accord, e.g., Lava Trading, Inc. v. Hartford Fire Ins. Co., 03 Civ. 7037, 2005 WL 66892 at *2 (S.D.N.Y. Jan. 11, 2005); Denney v. Jenkens & Gilchrist, 362 F. Supp. 2d 407, 416-17 (S.D.N.Y. 2004) (describing the Lois Sportswear test as "[t]his circuit's standard test for inadvertent disclosure"); United States v. Rigas, 281 F. Supp. 2d 738; Deere & Co. v. MTD Prods., Inc., 00 Civ. 5936, 2003 WL 21921265 at *1 (S.D.N.Y. Aug. 1, 2003); Stoner v. New York City Ballet Co., 2002 WL 31875404 at *2; Johnson v. Sea-Land Serv., Inc., 2001 WL 897185 at *6 (referring to Lois Sportswear factors as "the criteria consistently applied to assess the issue of waiver"); In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 222 (S.D.N.Y. 2001); United States v. Gangi, 1 F. Supp. 2d at 264; Prescient Partners L.P. v. Fieldcrest Cannon, Inc., 96 Civ. 7590, 1997 WL 736726 at *5 (S.D.N.Y. Nov. 26, 1997) (referring to Lois Sportswear as the "standard test"); Aramony v. United Way of America, 969 F. Supp. at 235; Liz Claiborne, Inc. v.

---

[6/] This balancing test represents the middle-of-the-road, or flexible approach, that the majority of circuits follow. See United States v. Rigas, 281 F. Supp. 2d at 737-38; United States v. Gangi, 1 F. Supp. 2d at 264. The other two approaches adopted by other circuits fall at opposite ends of the spectrum: The strict approach holds that voluntary production of a document, whether intentional or accidental, waives the privilege; the lenient approach holds that inadvertent production never waives the privilege. See United States v. Rigas, 281 F. Supp. 2d at 737-38; see generally 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.42[1]-[4] (2d ed. 2005).

Mademoiselle Knitwear, Inc., 96 Civ. 2064, 1996 WL 668862 at *3 (S.D.N.Y. Nov. 19, 1996); see

In re Grand Jury Proceedings, 219 F.3d 175, 184 (2d Cir. 2000).[7]

## II.     APPLICATION OF THE LEGAL STANDARD TO AEP'S PRODUCTION OF THE THREE PAGES AT ISSUE

### A.     Reasonableness of Precautions

"The fact of disclosure does not necessarily mean that the precautions were unreasonable. . . . Generally, precautions will be reasonable if the procedure followed in maintaining the confidentiality of the document [is] not . . . so lax, careless, inadequate or indifferent to consequences as to constitute a waiver." Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 96 Civ. 7590, 1997 WL 736726 at *5 (S.D.N.Y. Nov. 26, 1997) (quotations omitted); see also, e.g., United States v. Rigas, 281 F. Supp. 2d 733, 739 (S.D.N.Y. 2003) ("[T]he reasonableness of a party's actions to protect privileged information should be measured in light of the risks foreseeable to that party at the time the precautions were taken. The mere fact of an accidental disclosure does not automatically render the precautionary measures unreasonable at the time they were performed."); In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 222 (S.D.N.Y. 2001).

Wolinsky outlined Hogan & Hartson's document review procedures. (See pages 2-3 above.) The fact that there were two "page-by-page" reviews of the documents, by experienced attorneys, before the documents were produced weighs in AEP's favor, as does the fact that the Bates

---

[7]     This approach has been applied to documents protected by the attorney-client privilege as well as the work product doctrine. Bank Brussels Lambert v. Chase Manhattan Bank, N.A., 93 Civ. 5298, 93 Civ. 8270, 94 Civ. 1317, 93 Civ. 6876, 1996 WL 944011 at *3 (S.D.N.Y. Dec. 19, 1996).

numbers for the three inadvertently produced pages were listed on AEP's privilege log.  See, e.g., Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 1997 WL 736726 at *5 (No waiver of privilege where attorney reviewed documents and instructed paralegal to remove marked privileged documents but paralegal failed to remove all privileged documents and produced them to adversary; "[i]mposing a duty on attorneys to personally double check simple tasks performed by paralegals in a large document production would needlessly increase the costs of litigation."); Aramony v. United Way of America, 969 F. Supp. 226, 236 (S.D.N.Y. 1997) (no waiver where attorneys and paralegals initially reviewed documents and flagged potentially privileged documents for review by senior associates, even though law firm did not re-review documents selected by adversary for copying); Lloyds Bank PLC v. Republic of Ecuador, 96 Civ. 1789, 1997 WL 96591 at *4 (S.D.N.Y. Mar. 5, 1997) (no waiver where attorneys spent fifty hours reviewing documents for responsiveness and privilege before producing them and the documents designated as privileged were segregated and marked); Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp., 93 Civ. 5125, 1995 WL 117871 at *2 (S.D.N.Y. Mar. 20, 1995) (no waiver where attorney "spent 145 hours in reviewing documents for production, that he segregated documents to which privilege rights apply, and that only by inadvertence was this small number of [privileged] documents included among the documents produced.").

This is not a case where plaintiffs' counsel, on reviewing the 65,000 pages of the production, sought to copy only selected documents.  Compare, e.g., Semi-Tech Litig. LLC v. Bankers Trust Co., 02 Civ. 0711, 2002 WL 1751267 at *2 (S.D.N.Y. July 27, 2002) (waiver found

where producing counsel failed to review documents that other side said it wanted to copy immediately, which the Court found to be "a red flag if ever there was one"). Plaintiffs' counsel asked that all 65,000 pages be copied. (See page 3 above.) Thus, there was no reason for AEP's counsel to re-review the entire production a third time.

Plaintiffs' counsel points to the fact that two of the three pages were Bates numbered sequentially to documents that Hogan & Hartson re-reviewed while the documents were at the copy service. (5/2/05 Plfs. Letter Br. at 16.) Hogan & Hartson has explained, however, that that re-review was based on a generalized index, not a page by page index, and that the pages at issue were indexed in a separate grouping from the grouping that was re-reviewed. (See pages 4-5 above.) The Court accepts this explanation as reasonable under the circumstances.

Finally, the three inadvertently produced pages were listed on AEP's privilege log. "Including privileged material on a privilege log puts the opposing party on notice that if any document listed on the log is produced, its production was inadvertent and the document should be returned." Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., 96 Civ. 2064, 1996 WL 668862 at *4 (S.D.N.Y. Nov. 19, 1996); see Oxyn Telecomm., Inc. v. Onse Telecom, 01 Civ. 1012, 2003 WL 660848 at *8 (S.D.N.Y. Feb. 27, 2003) (No waiver where "[t]he document production in this case was apparently voluminous. The document was listed on Onse's privilege log, and once Onse's attorneys learned that it had been mistakenly produced they demanded its immediate return.").

The Court holds that the precautions taken by AEP's counsel were reasonable, and thus support a finding that no waiver occurred.

**B.** **Time Taken to Rectify the Error**

"'Inordinate delay in claiming the privilege can prejudice the adversary and may be deemed a waiver.'" Prescient Partners L.P. v. Fieldcrest Cannon, Inc., 96 Civ. 7590, 1997 WL 736726 at *6 (S.D.N.Y. Nov. 26, 1997); accord, e.g., Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 445 (S.D.N.Y. 1995). "The period after the producing party realizes that privileged information has been disclosed is the relevant period for measuring whether the privilege has been waived." Aramony v. United Way of America, 969 F. Supp. 226, 237 (S.D.N.Y. 1997); see, e.g., Johnson v. Sea-Land Serv., Inc., 99 Civ. 9161, 2001 WL 897185 at *7 (S.D.N.Y. Aug. 9, 2001) ("the length of delay in claiming the privilege should be measured from the time the producing party learns of the disclosure, not from the time of the disclosure itself."); In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 222 (S.D.N.Y. 2001) ("The relevant correction period begins when the party realizes that an error has been made."); Prescient Partners L.P. v. Fieldcrest Cannon, Inc., 1997 WL 736726 at *6 ("The delay should be measured from the time the producing party learns of the disclosure, not from the time of the disclosure itself. No inordinate delay occurred in this case because Prescient's counsel wrote defendants' counsel the day after learning of the error to demand return of the documents.") (citations omitted); Lloyds Bank PLC v. Republic of Ecuador, 96 Civ. 1789, 1997 WL 96591 at *5 (S.D.N.Y. Mar. 5, 1997); Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp., 93 Civ. 5125, 1995 WL 117871 at *2 (S.D.N.Y. Mar. 20, 1995) (No waiver

where counsel "acted within two business days after discovery of his inadvertence. It is the period after the producing party realizes that privileged information has been disclosed that measures the waiver of the privilege.").

"'Inadvertent disclosure has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents.'" United States v. Rigas, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003). Thus, an immediate response to the discovery of the inadvertent disclosure generally militates against a finding of waiver. See, e.g., id. (where government sent letter asserting privilege on same day it became aware of he inadvertent production, and followed up the next day, "[i]n light of the Government's prompt and sustained efforts to rectify its error, the Court is convinced that this factor clearly weighs against a finding of waiver."); Prescient Partners L.P. v. Fieldcrest Cannon, Inc., 1997 WL 736726 at *6 (no inordinate delay where counsel wrote adversary the day after learning of the error to demand return of the documents); Aramony v. United Way of America, 969 F. Supp. at 237 ("[A] request for the return of the privileged material within twenty-four hours of learning of the inadvertent production weighs against a loss of privilege."); Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp., 1995 WL 117871 at *2 (reacting two business days after discovery of the inadvertent disclosure was not a delay); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. at 445-46 (no waiver of privilege by inadvertent production where "[a]s soon as plaintiffs' counsel were alerted to the production [of the privileged documents], they asserted the privilege and sought

the return of the documents.  Indeed, the documents themselves had been accompanied by a designation of privilege.").[8]

  Here, on being notified about the first two pages by plaintiffs' counsel, Hogan & Hartson responded that same day by telephone and email to the discovery, asserted privilege over the two pages and requested their return.  (<u>See</u> page 6 above.)[9]

  Hogan & Hartson's immediate response to the discovery of the production errors weighs against a finding of waiver.

---

[8] <u>Compare</u>, <u>e.g.</u>, <u>Lava Trading, Inc.</u> v. <u>Hartford Fire Ins. Co.</u>, 03 Civ. 7037, 2005 WL 66892 at *3 (S.D.N.Y. Jan. 11, 2005) ("Defendants' extraordinary delay on this matter [of seeking return of the documents] is entirely unexplained, and it is a fact that substantially undercuts its argument on the current motion" seeking return of the documents.); <u>SEC</u> v. <u>Cassano</u>, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) ("Although the SEC acted promptly once it determined that the document had been produced, a factor cutting in its favor, the time taken to rectify the error, in all the circumstances, was excessive.  There was no excuse for waiting 12 days to find out what the document was."); <u>Bank Brussels Lambert</u> v. <u>Chase Manhattan Bank, N.A.</u>, 93 Civ. 5298, 93 Civ. 8270, 94 Civ. 1317, 93 Civ. 6876, 1996 WL 944011 at *5 (S.D.N.Y. Dec. 19, 1996) (six-month delay in asserting the privilege after receiving notice of the inadvertent disclosure constituted waiver); <u>Liz Claiborne, Inc.</u> v. <u>Mademoiselle Knitwear, Inc.</u>, 96 Civ. 2064, 1996 WL 668862 at *5 (S.D.N.Y. Nov. 19, 1996) (finding waiver where counsel waited a month before requesting return of the privileged documents because "[i]nadvertent disclosure has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of privileged documents.").

[9] The fact that eighteen days after the first two pages at issue were discovered, the third privileged page at issue was found to have been produced (<u>see</u> page 6 above), does not necessitate a finding that Hogan & Hartson's procedures were sufficiently careless as to warrant waiver, nor that they did not act promptly.  <u>See</u>, <u>e.g.</u>, <u>Stoner</u> v. <u>New York City Ballet Co.</u>, 99 Civ. 0196, 2002 WL 31875404 at *3 (S.D.N.Y. Dec. 24, 2002) ("[T]he fact that after the initial error was discovered, an additional quantity of privileged documents were revealed to have been included in the production does not change [the] conclusion" that counsel's error did not waive the privilege.).

**C.** **The Scope of Discovery and the Extent of the Disclosure**

The third factor calls for comparing the size of the document production as a whole to the number of privileged documents disclosed. E.g., Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 96 Civ. 7590, 1997 WL 736726 at *6-7 (S.D.N.Y. Nov. 26, 1997) (no waiver where 117 pages of privileged documents inadvertently included in 12,612 pages produced). "'Courts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver.'" Id.; see, e.g., United States v. Rigas, 281 F. Supp. 2d 733, 740 (S.D.N.Y. 2003) ("Courts generally decline to find waiver when 'a relatively small number of privileged documents were disclosed in comparison to the total number of documents produced.'"); Lloyds Bank PLC v. Republic of Ecuador, 96 civ. 1789, 1997 WL 96591 at *4 (S.D.N.Y. Mar. 5, 1997). "This factor recognizes the reality that 'it is virtually impossible to avoid any error whatsoever in dealing with large volumes' of discovery material." United States v. Rigas, 281 F. Supp. 2d at 740.

AEP inadvertently disclosed three pages out of 65,000 pages produced after review of 140,000 pages. (See page 2 above.) The small number of privileged pages disclosed compared to the large volume of pages produced weighs in favor of not finding waiver. See, e.g., Stoner v. New York City Ballet Co., 99 Civ. 0196, 2002 WL 31875404 at *2, 3 (S.D.N.Y. Dec. 24, 2002) (15 privileged documents disclosed out of 1,000 documents produced "is not so large as to suggest that the precautions taken by defendant's attorney were so ineffective as to justify waiver of the privilege."); In re Cooper Mkt. Antitrust Litig., 200 F.R.D. 213, 222 (S.D.N.Y. 2001) (where party

claimed it inadvertently produced 17 documents out of 15,000 pages of documents produced, "the number of documents inadvertently produced . . . was relatively small in comparison with the total production and is well within [the] margin of error that courts have found acceptable."); Aramony v. United Way of America, 969 F. Supp. 226, 237-38 (S.D.N.Y. 1997) ("In light of th[e] precedent," no waiver of privilege where the 99 pages of privileged documents disclosed was a relatively small number compared to over 630,000 pages of documents produced, and 68,500 pages selected for copying); Lloyds Bank PLC v. Republic of Ecuador, 1997 WL 96591 at *4 (no waiver where fifty documents covering 227 pages inadvertently produced as part of 10,000 pages of production); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985) (Production of 22 privileged documents out of 16,000 pages inspected and 3,000 pages requested to be copied was evidence of an inadvertent rather than a knowing waiver). Indeed, plaintiffs concede as much. (5/2/05 Plfs. Letter Br. at 17: "[A]lthough these documents were not voluminous compared to the total scope of AEP's production, they should have stood out to AEP's counsel by virtue of their importance.").

### D.    Fairness

Courts generally weigh the prejudices to each party. On the one hand is the degree to which the contents of the documents have been disseminated and the receiving party's reliance thereon. See, e.g. United States v. Rigas, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003). On the other is the harm to the client who suffers the waiver of privilege due to an inadvertent error. See In re

Cooper Mkt. Antitrust Litig., 200 F.R.D. 213, 223 (S.D.N.Y. 2001); Prescient Partners L.P. v.

Fieldcrest Cannon, Inc., 96 Civ. 7590, 1997 WL 736726 at *7 (S.D.N.Y. Nov. 26, 1997) ("Absent

any prejudice to the [receiving party] caused by restoring immunity to the documents, '[i]t would be

inappropriate for the client of producing counsel to suffer the waiver of privilege . . . due to an

isolated, inadvertent error.'"); Lloyds Bank PLC v. Republic of Ecuador, 96 Civ. 1789, 1997 WL

96591 at *5 (S.D.N.Y. Mar. 5, 1997).

        Plaintiffs contend that having to return the documents at issue will deny them "access

to information which is vital to its case and which has already been produced to them." (5/2/05 Plfs

Letter Br. at 17.) However, "'[t]he prejudice factor focuses only on whether the act of restoring

immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself

deprives parties of pertinent information.'" Prescient Partners L.P. v. Fieldcrest Cannon, Inc., 1997

WL 736726 at *7 (quoting Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437,

446 (S.D.N.Y. 1995)); see, e.g., United States v. Rigas, 281 F. Supp. 2d at 742 ("Defendants were

not entitled to the work product [that was inadvertently produced]. By restoring the privilege as to

these documents, the Court takes nothing away from Defendants, but rather prevents a 'windfall' to

them."); In re Cooper Mkt. Antitrust Litig., 200 F.R.D. at 223 ("Depriving a party of information in

an otherwise privileged document is not prejudicial.").

        Here, plaintiffs have not used or relied on the documents. AEP immediately notified

plaintiffs' counsel that the documents were privileged, and brought the matter to the Court's attention,

which ordered the three pages placed in a sealed envelope pending resolution of this issue. (See page 6 above.) See United States v. Rigas, 281 F. Supp. 2d at 742 ("There is no such risk of prejudice in the present case. All defense counsel have refrained from reviewing Lee's work product [i.e, the inadvertently produced material] pending resolution of this discovery dispute."); Johnson v. Sea-Land Serv., Inc., 99 Civ. 9161, 2001 WL 897185 at *7 (S.D.N.Y. Aug. 9, 2001) ("Defendant has not relied on the [inadvertently produced] e-mail in any fashion, and there is no claim that plaintiff has made strategic use of selective waiver of the privilege."). Therefore, plaintiffs have not demonstrated any unfairness to them that would result from the return of the documents.

## CONCLUSION

For the reasons discussed above, all four factors support a finding of inadvertent production insufficient to constitute a waiver of the privilege. Accordingly, plaintiffs' motion is DENIED.

SO ORDERED.

Dated:       New York, New York
             July 15, 2005

**Andrew J. Peck**
United States Chief Magistrate Judge

Copies to:    Bernard Persky, Esq.
              Peter Kadzik, Esq.
              Judge Victor Marrero