UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
                                     :     03 Civ. 6186 (VM) (AJP)
In Re: NATURAL GAS COMMODITY LITIGATION
                                     :     **OPINION AND ORDER**
                                     :
------------------------------------- x

**ANDREW J. PECK, United States Magistrate Judge:**

Prior Orders of this Court and Judge Marrero compelled the non-party Publications to produce reported trade data for the Henry Hub and certain other natural gas trading locations. See In re Natural Gas Commodity Litig., 235 F.R.D. 199 (S.D.N.Y. Nov. 16, 2005) (Peck, M.J.), aff'd as modified, 235 F.R.D. 241 (S.D.N.Y. Apr. 18, 2006) (Marrero, D.J.), familiarity with which is presumed (and defined terms from which are utilized herein).

The Publications have produced the data pursuant to protocols agreed upon by the plaintiff and approved by the Court. The data sets identify the Non-Settling Defendants by name, and the identity of other reporting companies have been masked; each Settling Defendant has been separately identified as "SD-1" through "SD-18." (See 7/31/06 Joint Status Report to the Court at p. 6.)

Presently before the Court is the Non-Settling Defendants' application to "uncode" the codes used for the Settling Defendants. McGraw-Hill opposes the application on qualified reporter's privilege grounds.[1] The Court's prior opinions held that the qualified reporter's privilege

---

[1] The Non-Settling Defendants withdrew the request for similar identification from Intelligence Press. (See 8/1/06 Conf. Tr. at 11.)

(continued...)

applies to the Publications, 235 F.R.D. at 209-11,[1] 235 F.R.D. at 244, but that plaintiffs had overcome the privilege. The Court cannot say the same for defendants.

For the reasons set forth below, the Non-Settling Defendants' application is DENIED.

## DISCUSSION

Crucially, while defendants subpoenaed McGraw-Hill for reported trade data, they did not seek to enforce their subpoena. Thus, they must accept whatever data plaintiffs have agreed to receive from the Publications in response to plaintiffs' subpoenas.[3]

In addition, there is no compelling "fairness" reason for the Court to reach a different result:

First, the Court sees no reason why the data for the Settling Defendants should be treated differently than the data for the hundred(s) of non-parties whose reporting data was produced without source identifiers. (See 8/1/06 Conf. Tr. at 7, 9-10.)

---

[1] (...continued)
McGraw-Hill does not advance any burden argument, as the uncoding merely would require McGraw-Hill to identify that code "SD-#" was used for "Settling Defendant X," etc., basically one page with 18 lines of information.

[2] This Court also previously noted that at oral argument on plaintiffs' original motion to compel, defense counsel waived defendants' confidential source status. See 235 F.R.D. at 210-11. However, as the Court then noted, the Publications did not waive their own interest in protecting sources. Id.

[3] Indeed, at the August 1, 2006 conference, defendants dropped their request for "uncoding" from Intelligence Press because defendants had never even subpoenaed Intelligence Press. (8/1/06 Conf. Tr. at 11.) While defendants did subpoena McGraw-Hill, they did not move to compel compliance with their subpoena. The Court sees no difference between not subpoenaing Intelligence Press and not seeking to compel McGraw-Hill to comply with defendants' subpoena. Defendants made a strategic choice in hope plaintiffs would not get the Publications' data; they must live with the effects of that strategy.

Second, the Settling Defendants object to disclosure of their data. To the extent this Court's (and Judge Marrero's) prior Orders were based in part on the defendants' waiver of their confidential source status at the November 9, 2005 hearing, e.g., 235 F.R.D. at 210-11, that waiver would not apply to those Settling Defendants who, in fact, had agreements in principle with plaintiffs to settle at the time of the November 9 conference. It appears that 12 of the 18 Settling Defendants (4 "wash trade" defendants and 8 "false reporting" defendants) had such settlement agreements-in-principle with plaintiffs before the November 9 conference. (See 7/31/06 Joint Status Report to the Court at p. 7 & nn.1-2.) Thus, the waiver of confidentiality would not apply to those 12 Settling Defendants. It would be unfair to treat the last 6 Settling Defendants differently from the 12 "early" Settling Defendants or the hundreds of non-parties, all of whose data was produced only in coded form.[4]

Third, the Non-Settling Defendants contend that they need identification of the Settling Defendants' reporting data because of the judgment credit to which they will be entitled if they are found liable to plaintiffs. (See 7/31/06 Joint Status Letter to the Court at p. 9.) The Court does not see why the judgment credit would apply to individual Settling Defendants' data, as opposed to that of the Settling Defendants as a group. Nevertheless, should that eventuality arise post-

---

[4] Moreover, while the Non-Settling Defendants have moved for uncoding as to all 18 Settling Defendants, they have actual transaction data for only 12 of the 18, and monthly reports for 8 of the 12. Thus, uncoding would only be appropriate for 8 of the 18 Settling Defendants in any event. It is unclear how many of this subset of 8 had settled before the November 9, 2005 waiver of defendants' confidential source status.

judgment, the Non-Settling Defendants can apply to the Court at that time for the uncoding information.

Finally, while plaintiffs in their original application to this Court (and in their further submissions to Judge Marrero) met their burden of showing that the data plaintiffs sought from the Publications was highly material and relevant and "necessary or critical" to plaintiffs' claim, this Court is not convinced that defendants similarly meet the stringent burden. Plaintiffs need the data to prove plaintiffs' actual damages from each instance of the (Non-Settling) Defendants' false reporting. See 235 F.R.D. at 212-13 & n.15 (comparing plaintiffs' needs to prove damages to the CFTC, which only needed to prove the fact of some false reports). Moreover, the Non-Settling Defendants, in contrast to plaintiffs, need only compare their own data to all of the other data reported to the Publications from Settling and Non-Settling Defendants and non-parties, to see if their "false" report was material. Additionally, the Non-Settling Defendants and their expert concede that there are ways for them to infer the identities of the coded Settling Defendants from the data they have, as well as "other alternative methods for extracting 'but for' index prices which would not rely on knowing the Settling Defendants' individual identities . . ." (See 8/7/06 Wolinsky Letter to Court at 2-3 & Attached Mackay Aff. at p. 3 n.6.) Specifically, Dr. Mackay states that he can match Settling Defendants' reports to McGraw-Hill with the McGraw-Hill "coded" entries for the Settling Defendants, but "there is no certainty that all 8 Settling Defendants will be correctly identified." (Mackay Aff. at 4.) While there is no "certainty," the Court believes the Non-Settling Defendants and their expert can employ this or another alternative. The Non-Settling Defendants have not met their stringent burden of showing necessity for uncoding.

## CONCLUSION

Defendants did not seek to compel enforcement of their subpoena to McGraw-Hill. As such, they are limited to the protocol that plaintiffs reached with McGraw-Hill, and the Court approved, that only the data of the Non-Settling Defendants would be produced in source-identifiable form, while the data of the non-parties would be anonymous and the data of the Settling Defendants would be "coded." Defendants made their strategic choice in opposing plaintiffs' motion to compel the Publications to comply with plaintiffs' subpoenas, and in not seeking to compel McGraw-Hill to respond to defendants' subpoena; the Non-Settling Defendants are bound by the ramifications of their strategy. They cannot now compel McGraw-Hill to produce data. Moreover, there is no compelling reason in fairness for the Court to reach a contrary result.

The Non-Settling Defendants' application for the uncoding of the data the Settling Defendants gave McGraw-Hill is DENIED.

SO ORDERED.

Dated: New York, New York
August 24, 2006

Andrew J. Peck
United States Magistrate Judge

Copies **by fax** to:	Bernard Persky, Esq.
William A. Molinski, Esq.
Jay K. Musoff, Esq.
Robert B. Wolinsky, Esq.
Victor Kovner, Esq.
Nathan Siegel, Esq.
Judge Victor Marrero