**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

In re:

Natural Gas Commodity Litigation

-----------------------------------------------------------X

Master File No. **03 CV 6186(VM)(AJP)**

ECF Case

**Hon. Victor Marrero, USDJ**

**NOTICE OF CROSS MOTION FOR INTERVENTION**

**PLEASE TAKE NOTICE** that upon the annexed Memorandum in Support of Intervenor Mark Nordlicht's Motion for full Intervention status, and the Exhibits annexed thereto, Mark Nordlicht will Cross Move this Court by his attorneys Regosin, Edwards, Stone & Feder, Esqs. on a date and time to be designated by the Court, for an Order pursuant to Federal Rules of Civil Procedure §24(a)(2) for an Order granting Cross-Movant Mark Nordlicht herein the status of Intervenor in this Class Action, and denying the Plaintiffs' Motion seeking Preliminary Approval of the Plaintiffs' proposed Plan of Allocation.

Dated: October 27, 2009

Respectfully submitted,

***REGOSIN, EDWARDS, STONE & FEDER, ESQS.***
Attorneys for Intervenor Mark Nordlicht

By: ______________________________
Saul E. Feder, Esq. (SF-3524)
Office and P.O. Address
225 Broadway, Suite 613
New York, New York 10007
212-619-1990

To:

Lovell, Stewart, Halebian, LLP
Christopher Lovell, Esq.
61 Broadway
Suite 501
New York, New York
Tel. 212-608-1900
Fax. 212-719-4677

Lowey Dannenberg Cohen & Hart, P.C.
Geoffrey Horn, Esq.
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310
Tel. 914-997-0500
Fax. 914-997-0035

Labaton Sucharow & Rudoff, LLP
Bernard Persky, Esq.
100 Park Avenue, 12th Floor
New York, New York10017
Tel. 212-907-0700
Fax. 212-818-0477

Finkelstein Thompson, LLP
Douglas Thompson, Esq.
1050 30th Street, NW
Washington, D.C. 20007
Tel. 202-337-8000
Fax. 202-337-8090

Stephen Goldberg, Esq.
One North End Avenue
World Financial Center, 11th Fl., Suite 1107
New York, New York 10282-1101
Tel. 212-845-5100
Fax. 212-845-5102

Hogan & Hartson LLP
Robert B. Wolinsky, Esq.
555 Thirteenth Street, NW
Washington, District of Columbia 20004
Tel. 202-637-8895
Fax. 202-637-5910

ECF Filing Notification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

In re:

Natural Gas Commodity Litigation

---------------------------------------------------------X

Master File No. **03 CV 6186(VM)(AJP)**

ECF Case

**Hon. Victor Marrero, USDJ**

**MEMORANDUM IN SUPPORT OF MARK NORDLICHT'S MOTION FOR INTERVENTION IN THE ACTION**

## PRELIMINARY STATEMENT

MARK NORDLICHT's attorney Saul E. Feder, Esq. of Regosin, Edwards, Stone & Feder, Esqs., respectfully submits this Memorandum in support of MARK NORDLICHT's Motion for full Intervention status in this Class Action, and submits hereby his objections to the Plaintiffs' request for Preliminary Approval of their corrected proposed Plan of Allocation (occasionally also referred to by Plaintiffs as their proposed "Plan of Distribution.")

The undersigned has represented Class Member MARK NORDLICHT's interests in this proceeding since my January 25, 2007 initial correspondence to Plaintiffs' attorneys and follow-up correspondence and telephone conferences thereafter with them and with Thomas Faucher of the Court appointed Settlement Administrator's Office,- resulting in their all recognizing this firm as the attorneys for MARK NORDLICHT in this Action,- and their then corresponding directly with us in connection herewith in MARK NORDLICHT's behalf,- including the written acknowledgement from Christopher Lovell, Esq. of Lovell, Stewart, Halebian, LLP in his June

4, 2007 letter to me,- advising me that he "anticipate having a draft of the Plan of Allocation by the end of July…", and agreeing therein that he "will provide you (me) with a draft of the Plan of Allocation before it is submitted to the Court."

Not having received any of the requested underlying documentation I required to adequately evaluate the handling of MARK NORDLICHT's submissions despite my repeated requests,- and not having received a draft of the proposed Plan of Allocation prior to its recently being submitted to the Court for Preliminary Approval,- the undersigned sought and received an Order from Hon. Andrew J. Peck on October 20, 2009 granting MARK NORDLICHT limited Intervenor status for my review and evaluation of the information I sought (Exhibit "A" hereto).

As a result of my October 20, 2009 correspondence with Plaintiffs' counsel seeking their compliance with Judge Peck's Order (Exhibit "B" hereto), some documents were received by me on October 21, 2009,- but much of the information sought was withheld.

**<u>ARGUMENT FOR FULL INTERVENTION STATUS</u>**

On October 22, 2009 the undersigned again corresponded with Plaintiffs' attorneys itemizing the missing documentation and information (Exhibit "C" hereto).

Late in the evening on October 23, 2009,- responsive communication was received from Geoffrey Horn, Esq. submitting two additional documents,- but advising that they were still "reviewing" my request for the additional critical documents required to evaluate MARK NORDLICHT's claim, and the handling of same by Plaintiffs and the Claims Administrator,-

and in order to properly evaluate and respond to the proposed Plan of Allocation. (Exhibit "D" hereto.)

Yesterday evening, October 26, 2009, I received a Supplemental letter from Geoffrey Horn, Esq., partially responsive to the request for the missing information,- but substantially inadequate and evasive (Exhibit "E" hereto).

By way of example,- rather than offer an explanation of the basis for Plaintiffs' election to exclude all of their MARK NORDLICHT's tens of millions of dollars of losses from the proposed distributions' two largest categories of reimbursement to Class Members,- "Futures Net Losses in the First Five Trading Days of each month" for the 2006 Distribution and Future Net Artificial Losses for the 2007 Distribution,- Mr. Horn's October 26, 2009 letter merely asserts; e.g. that "*No future trades submitted by Mr. Nordlicht are eligible under the 2007 Judgment Futures Contract Net Price Artificiality*,"- without explaining WHY they're not eligible!

Additionally,- despite Plaintiffs' Corrected Memorandum's attempted justification of their unfair proposed distribution of most of the Settlement sums to Class Members who had losses and/or trades in the "First Five Trading Days of each month",- by claiming to rely on the determination of Dr. Dwyer (page "9" of Plaintiffs' Corrected Memorandum) and on the Opinion of Dr. Pirrong (page "10" of the Corrected Memorandum),- Geoffrey Horn's October 26, 2009 letter to me continues to <u>deny</u> that the Plaintiffs have <u>any</u> Reports from Dr. Pirrong (see Exhibit "E" hereto),- and,- while the Plaintiffs did supply me with three written Opinions

from Dr. Dwyer (dated January 24, 2005, May 9, 2005, and October 23, 2006),- none of those Opinions make any such "Five Day" recommendation,- despite my October 20, 2009 Discovery Demand for "All of the Reports and Opinions you received from Mark Dwyer, PHD…." (see Exhibit "B" hereto).

It is clear at this time that full Intervenor status is required for MARK NORDLICHT to be fully protect in this matter.

The undersigned requires at least an additional 30 days time to receive and to evaluate the documentation and calculations I am entitled to in order to adequately, properly and fully protect MARK NORDLICHT's interests and entitlements as a Class Member who is entitled to his proper share of the Settlement Funds.

**ARGUMENT ON**
**DEFICIENCIES IN PROPOSED PLAN OF ALLOCATION**

The undersigned agrees with Plaintiffs' assertion that its Motion seeking Preliminary Approval of their proposed Plan of Allocation is properly submitted based on this Court's continuing jurisdiction pursuant to paragraph "7" of the 2006 Judgment and paragraph "6" of the 2007 Judgment, which provide in relevant part that:

> "*without affecting the finality of this Final Judgment and Order of Dismissal, the Court hereby reserves and retains continuing and exclusive jurisdiction over all matters relating to the administration, consummation and enforcement of the terms of the Settlement Agreements and the settlements embodied therein….*"

Additionally, I also acknowledge that the Plaintiffs are correct in asserting that "*the Court's principal obligation is simply to ensure that the fund distribution is fair and*

*reasonable....*" (Walsh v. The Great Atlantic and Pacific Tea. Co., Inc. 726 F.2nd 956, 964 (3rd Cir. 1983). Accord, e.g. Maywalt v. Parker & Parsley Petroleum Co. 1997 W.L. 7668 (S.D.N.Y. 1997) at *4.

Unfortunately, the Plaintiffs' proposed Plan of Allocation is neither "fair" nor "reasonable."

**Unjust Categories in Proposed Plan of Allocation**:

For purposes of ease of evaluation,- the undersigned has undertaken to prepare a Chart[1] of the allocations set-up submitted by Plaintiffs in their proposed Plan of Allocation for distribution of the 2007 Net Settlement Fund of approximately $17,975,000.00 plus interest, and the 2006 Net Settlement Fund of approximately $46,130,000.00 plus interest. A copy of said Chart is annexed hereto for the Court's convenience as Exhibit "F" for ease of evaluation and clarification.

**A. Insufficient 2006 Settlement Funds are distributed to Net Futures Losses in the Entire Class Period**: There is a distribution of only 22.5% of the immense 95% of the 2006 Settlement Fund allocated to Class Members with Net Losses on Futures Contracts for those whose losses occurred during the entire Class Period,- with an unjust and unexplained 50% of that 95% improperly allocated to those Class Members whose losses occurred in the First Five Days of each month. No explanation for this glaring disparity is offered by Plaintiffs.

[1] The summarizations in the Chart were prepared by the undersigned in good faith and they are believed to be accurate. Any inadvertent errors, if any, are unintentional, and I apologize for them in advance!

B. **<u>First Five Days of the Month</u>**: (a) **<u>Options</u>**: The Plaintiffs' proposed subdivision of the 5% given to Options' transaction losses in both the 2006 Net Settlement Fund and in the 2007 Net Settlement Fund by giving 77.5% of that 5% to Class Members whose losses and/or whose volume of trades occurred <u>only in the first five days of each month</u>,- and only the remaining 22.5% of that 5% to Net Options losses during the entire Class Period. There is no adequate explanation of why the entire sum allocated to Options losses is not distributed to Class Members whose losses occurred during the entire Class Period,- or based on the Class Members' volume of trades in the entire Class Period.

(b) **<u>Futures Losses</u>**: Additionally,- and even more glaringly,- 95% of the 200 Class Period Net Settlement Fund (which is the largest portion of the distribution of Judgment Proceeds),- which is allocated by the Plaintiffs' proposal to "Futures Contract Net Price Artificially Paid",- is likewise distributed so that 72.5% of that sum goes to Class Members whose Net Losses and Net Volume of trades occurs only in the First Five Trading Days of each month,- and allocates only 22.5% of that distribution to Net Losses during the entire Class Period. There is no adequate explanation of why the entire sum allocated to Future Losses is not distributed to Class Members whose losses occurred during the entire Class Period.

Those extremely disproportional proposed distribution categories reek of inequality and cry out for reallocation on a more equitable basis so as to give equality and parity to all Class Members who have suffered losses during the Class Period as a result of the Defendants' fraudulent conduct.

Interestingly,- as heretofore pointed out,- although Plaintiffs' Moving Memorandum asserts that "Dr. Dwyer's regression determined that the overwhelming majority of the artificiality impact occurred during the first five days of each month (page "9" of Plaintiffs' Corrected Memorandum"),- that determination does not appear anywhere in the Dwyer Declarations disclosed to me last week (Declarations dated January 24, 2005; May 9, 2005; and October 23, 2006 were the only Reports sent to me in response to my request on October 20, 2009 for all of Dr. Dywer's Reports),- and therefore the allegation regarding Dr. Dwyer's determination appears to be unsubstantiated!

Further,- the very Distribution Tables provided by Plaintiffs proves that the underlying premise attributed to Dr. Dwyer as to the "overwhelming majority" is likely false,- because it shows only $258,002,789.06 as the First Five day losses,- which is only about 43.5% of the $592,929,252.90 losses for the entire period!  Certainly not the "overwhelming majority" of the trades!

Further,- as hereinafter set forth,- that alleged "overwhelming majority" supposition is certainly not the case in the trades listed for MARK NORDLICHT,- who is listed as having lost almost 6% of all of the Futures losses.

Plaintiffs' Memorandum also asserts that "Dr. Pirrong opinioned that 75% of the 2006 Judgment should be paid to persons who suffered losses during the First Five Trading Days of each month" (page "10" of Plaintiffs' Corrected Memorandum).  However, Plaintiffs' have

refused to provide any Opinions from Dr. Pirrong,- and Plaintiffs continue to insist that they have none! (See first paragraph of Exhibit "E" hereto.)

The Plaintiffs admit in their Memorandum that,- "where the defendants' conduct renders the determination of the amount of the artificial impact impracticable, another recognized measure of damages is the net profit-losses on the transactions made in the market during the manipulated period" (page "7" of Plaintiffs' Corrected Memorandum).

Inasmuch as "artificial impact" for the 2006 Settlement Fund distribution became impossible because of lack of records (Plaintiff's Corrected Memorandum page "10"),- certainly,- at least for the 2006 distribution,- <u>actual losses should be the method of calculation</u>!

**C.** **<u>2007 Fund Future Losses v. Options Volume Losses</u>**: Plaintiffs propose to distribute 90% of the 2007 Net Settlement Fund to Class Members with "Futures Contract Net Price Artificially Paid" claims,- while paying only 5% of the Settlement Fund to Class Members who have losses on Options' transactions. Clearly, a far greater distribution should have been allocated to Class Members based on the volume of their Option trades in the Class Period.

**D.** **<u>2006 Fund Future Losses v. Options Volume Losses</u>**: Similarly, the proposed distribution of the 2006 Net Settlement Fund gets an even greater unbalanced distribution,- with 95% of the Net Settlement Fund going to Class Members who have "Futures Contracts at Price Artificially Paid Claims",- and again only 5% of the Settlement Fund is distributed to Class Members with losses on Options' transactions. Clearly, a far greater

distribution should have been allocated to Class Members based on the volume of their Option trades in the Class Period.

**E. <u>Insufficient Data Distribution</u>:** Another unanswered question is the Plaintiffs' proposal of giving 5% of the 2007 Net Settlement Fund to Class Members who were unable to submit transaction data sufficient to be able to track all Future Contracts purchases and sales by date,- whereas Plaintiffs' proposal provides no such distribution from the 2006 Net Settlement Fund.

**MARK NORDLICHT's Submission, and Plaintiffs'**
**<u>Allocations of It to its Proposed Distribution Categories</u>:**

MARK NORDLICHT timely submitted his June 30, 2006 Proof of Claim of his $16,207,256.00 losses for his Trades in Natural Gas Futures and Options on Natural Gas Futures during the Class Period.

Thereafter,- as required, MARK NORDLICHT timely and completely submitted proof of all of his Trades during the Class Period,- and same were entered and categorized by the Court appointed Settlement Administrator, as required.

The Settlement Administrator's compilation of the net losses incurred by MARK NORDLICHT over the Class Period totals $34,281,440.00 in accordance with the Schedules finally forwarded to me last week.

Based on the Schedules submitted to me by Plaintiffs' attorneys (see the itemization in Plaintiffs' counsels' October 26, 2009 letter annexed hereto as Exhibit "E"),- MARK NORDLICHT's proposed distributions are as follows:

**2006 Settlement Fund Proposed Distributions**

| Proposed Category | Aggregate of All Individuals Losses | NORDLICHT'S Listed Losses | Aggregate of All Individuals Volume | NORDLICHT'S Volume | NORDLICHT'S (rounded) Fraction of Aggregate | Proposed Settlement Fund | NORDLICHT'S Distributive Share |
|---|---|---|---|---|---|---|---|
| Futures Net Losses for Entire Period | $592,929,252.90 | $34,281,440.00 | | | .058 | $10,379,250.00 | $600,097.96 |
| Futures Net Losses in First Five Trading Days of each month | $258,002,289.06 | -0- | | | -0- | $23,065,000.00 | -0- |
| Futures Net Volume in First Five Trading Days of each month | | | 529,930.70 | 395.10 | .00075 | $10,379,250.00 | $7,738.45 |
| Options Net Losses for Entire Period | $201,795,681.72 | -0- | | | 0 | $518,962.50 | -0- |
| Options Net Losses in First Five Trading Days of each month | $114,177,123.29 | $2,525,929.15 | | | .0217 | $1,268,575.00 | $27,499.66 |
| Options Net Volume in First Five Trading Days of each month | | | 2,562,270.60 | 67,771 | .026 | $518,962.50 | $13,726.36 |

**2007 Settlement Fund Proposed Distributions**

| Proposed Category | Aggregate of All Individuals Losses | NORDLICHT'S Listed Losses | Aggregate of All Individuals Volume | NORDLICHT'S Volume | NORDLICHT'S (rounded) Fraction of Aggregate | Proposed Settlement Fund | NORDLICHT'S Distributive Share |
|---|---|---|---|---|---|---|---|
| Futures Net Price Artificiality Losses for Entire Period | $4,200,012.00 | -0- | | | 0 | $16,177,500.00 | -0- |
| Futures Net Volume over Entire Period (for Members with insufficient tracking data) | | | 437,666.92 | 395.10 | .0009 | $898,750.00 | $811.34 |
| Options Net Losses for Entire Period | $206,826,329.32 | -0- | | | 0 | $202,218.75 | -0- |
| Options Net Losses in First Five Trading Days of each month | $116,522,571.10 | $2,525,929.15 | | | .0217 | $494,312.50 | $10,715.51 |
| Options Net Volume in First Five Trading Days of each month | | | 2,602,969.20 | 67,771.00 | .026 | $202,218.75 | $5,264.97 |
| TOTAL: | | | | | | | $665,854.25 |

By way of highlighting the inequality, lack of fairness and adverse impact that the proposed Plan submitted by Plaintiffs has on MARK NORDLICHT,- and probably on many others,- by limiting the distribution of most of the Settlement Funds to Class Members whose losses and trades occurred in only the First Five Trading Days of each month,- among the highest loss entries shown in MARK NORDLICHT's Schedule as prepared by the Claim Administrator are the following,- which did not occur in the First Five Days of each month:

| | |
|---|---|
| December 26, 2000 | Loss of $49,706,860.00 |
| December 19, 2000 | Loss of $17,578,700.00 |
| April 26, 2000 | Loss of $8,662,290.00 |
| January 9, 2001 | Loss of $8,507,000.00 |
| January 31, 2001 | Loss of $5,234,600.00 |

While of course there were also some trading gains each month after the First Five Trading Days as well,- there were far more substantial losses during that end-of-month period than gains,- ultimately resulting in the huge losses suffered by MARK NORDLICHT in Natural Gas Trading.

For those substantial losses to be given such limited effect by Plaintiffs' irrational limitation of time to the First Five Trading Days of each month in the proposed Plan of Allocation is manifestly unfair.

**Additional Material Problems with the Proposed Plan of Allocation**:

(a)      **90% of 2007 Fund to the Futures Contract Net Price Artificially Paid**:

Despite the fact that the Claims' Administrator totals the entire sum of "Recognized Impact Claim to Class Action Members" for this category of distribution at only $4,200,012.00,- the Plaintiffs propose to distribute to these Fund Claimants a total amount of $16,177.500.00 calculated at 90% of the 2007 Net Settlement Fund of $17,975,000.00. No explanation is offered by the Plaintiffs as to why they seek to distribute four times the amount of Actual Losses to the Claimants who fall within this category based upon their calculations.

By way of example,- Claimant "600464" who has only a $4,260.00 "Recognized Impact Claim" is proposed to receive $16,408.56; and Claimant "601021" who has a $293,210.00 "Recognized Impact Claim" is proposed to receive $1,129,378.86.

Even more incomprehensive is the fact that MARK NORDLICHT,- trading losses are tens of millions of dollars is listed as having no "Futures Contract Net Price Artificially Paid" losses to qualify for any portion of the 90% distribution of the 2007 Net Settlement Fund proposed by Plaintiffs.

Despite my repeated requests of Plaintiffs' counsel for their explanation as to how their calculations resulted in this obvious blatantly unfair proposal,- I have received no explanatory responses whatsoever.

**(b) 95% of the 2006 Net Settlement Fund Distributed to "Futures Contract Net Price Artificially Paid":**

i. 50% of this 95% goes to losses on Futures Contracts during the First Five Trading Days of each month. Plaintiff's acknowledge that the aggregate of individual losses in this category is $258,002,289.06 and proposes to distribute $23,065,000.00 to Claimants who fall within this category.

ii. Despite the tens of millions of dollars of losses acknowledged to have been sustained by MARK NORDLICHT,- Plaintiffs offer MARK NORDLICHT nothing as a distribution within this category!

**(c) Additional Plan of Allocation Problems:**

Some of the problems in the document itself include:

a. The Futures Contracts transactions for Net Future Losses for the distribution of the 2006 Judgment on page "8" in section A(1)(a) provides that,- the calculation calls for the Net Losses incurred in

Futures Contracts "during the first five days of each month during the Settlement Class Period",- as opposed to during the first five trading days....

b. Similarly,- in the very same Section under A(2) (on page "9") for Net Futures Volume,- during the first five "trading" days of each month;

(i) subsection (a) seeks to calculate Class Members in its volume of Future trades "during the first five days of each month during the Settlement Class Period" as opposed to the first five trading days... and

(ii) Subsection (b) of Futures Contracts transactions (A)(2)(b) on page "9" the Plan seeks to set up a fraction in which the numerator is eligible Class Members' "Net Volume",- without limiting the Net Volume to only that within the "first five trading days" as was required by the caption, and then,- makes the denominator of the fraction all of the eligible Settlement Class Members "Net Volume",- and also again fails to limit it to only the first five trading days of the month; and

(iii) Similarly,- the following Subparagraph "c" on pages "9-10" defines the method of calculation of the "Net Volume during the first five trading day",- by asserting that the computation will be by netting all buys executed during "each first five days trading period" against the sales that were executed during "each first five trading period",- not specifying that it's the first five trading "days" of each month.

Problems like the above are numerous, and must all be dealt with.

## CONCLUSION

For all of the above reasons, Plaintiffs' Motion for Preliminary Approval of their proposed Plan of Allocation should be denied, and MARK NORDLICHT's Cross-Motion for full Intervention status should be granted.

Dated: October 27, 2009
New York, New York

Respectfully submitted,
***REGOSIN, EDWARDS, STONE & FEDER, ESQS.***

***By:*** ______________________________
***Saul E. Feder, Esq. (SF-3524)***
Attorneys for Intervenor MARK NORDLICHT
Office and P.O. Address
225 Broadway, Suite 613
New York, New York 10007
212-619-1990

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Intervenor MARK NORDLICHT's Cross-Motion with Memorandum in Support of Motion and Exhibits were filed electronically with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all counsel of record on the 27th day of October, 2009.

s/Saul E. Feder
Saul E. Feder, Esq. (SF-3524)

# EXHIBIT "A"

Case 1:03-cv-06186-VM Document 546 Filed 10/20/2009 Page 1 of 5

# ECF TRANSCRIPTION SHEET

**ANDREW J. PECK**
**UNITED STATES MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.: (212) 805-7933
Telephone No.: (212) 805-0036

Dated: October 20, 2009

Total Number of Pages: 4

## TRANSCRIPTION OF MEMO ENDORSED ORDER

Intervention granted for the limited purpose of obtaining access to information pursuant to the Confidentiality Order. If further intervention is desired, file a more formal application.

Copies to: Saul E. Feder, Esq. (Fax)
Judge Victor Marrero

Ex. A

# FAX TRANSMITTAL SHEET

**ANDREW J. PECK**
**UNITED STATES MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.: (212) 805-7933
Telephone No.: (212) 805-0036

Dated: October 20, 2009

Total Number of Pages: 5

| TO | FAX NUMBER |
|---|---|
| Saul E. Feder, Esq. | 212-964-9516 |
| | |
| | |

LAW OFFICES OF
EDWARDS, STONE & FEDER
225 BROADWAY
NEW YORK, N.Y. 10007

DAVID REGOSIN
PAUL J. EDWARDS
ROBERT M. STONE
SAUL E. FEDER
ADAM H. STONE

TELEPHONE
(212) 619-1010
(212) 619-1980
FAX: (212) 964-4516
www.rlsflaw.com

RECEIVED
OCT 19 2009
CHAMBERS OF
ANDREW J. PECK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 10/20/09

October 19, 2009

Hon. Andrew J. Peck
United States District Court
Chief Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1370
New York, New York 10007
Sent by Fax to: (212) 805-7933

**MEMO ENDORSED**

Re: Natural Gas Commodity Litigation
New York Southern District Court File No.: 03 CV 6186(VM)(AJP)
Hon. Victor Marrero, USDJ
Chief Magistrate Judge Andrew Peck

Dear Hon. Judge Peck:

This office represents Settlement Class Member Mark Nordlicht who was assigned Settlement Class Member Claimant No. 600195 in the above matter in connection with his loss of approximately $16,000,000.00.

For the past period of more than three years I have been in correspondence with Plaintiffs' counsels and with Tom Fauscher of the Administrator's office, in Mark Nordlicht's behalf, and they have all acknowledged my representation of Mark Nordlicht for the past three years.

In fact,- on June 4, 2007 I received responsive correspondence from Christopher Lovell of Lovell, Stewart, Halebian, LLP confirming that they "anticipate having a draft of the Plan of Allocation by the end of July...", and that they agreed therein that they "will provide you (me) with a draft of the Plan of Allocation before it is submitted to the Court."

With that agreed cooperation in hand, I did not move to Intervene in Mark Nordlicht's behalf,- because I believed that I had virtual intervention status from the agreement reached with Lovell, Stewart, Halebian, LLP.

Unfortunately,- notwithstanding numerous correspondence, conversations and follow up,- I was not allowed any input into the proposed Plan of Allocation as it was being negotiated, nor prior to it being submitted to the Court,- despite the aforesaid assurance.

I was just advised in correspondence dated October 15, 2009 from Ian Stoll of Lovell, Stewart, Halebian, LLP that,- despite my client's losses of approximately $16,000,000.00,- Mr.

REGOSIN, EDWARDS, STONE & FEDER

Hon. Andrew J. Peck
October 19, 2009

Nordlicht is nonetheless currently itemized as scheduled to receive approximately $655,854.23 as his return under the current proposed Plan of Allocation,- less than 5% of his losses.

Further,- despite my request for information as to the underlying Expert Opinions upon which the proposed Plan was based,- or for information as to which of the many subdivisions thereof my client's losses were placed,- and why those allocations were made,- I have been unable to receive any information.

In response to my request,- Ian Stoll of Lovell, Stewart, Halebian, LLP confirmed to me in his letter dated October 16, 2009 that the "**Co-lead Counsel do not oppose your (my) appearing on behalf of Mark Nordlicht as an intervening party**" in the Action, and that my firm will then be able to receive some of the requested information ("**Confidential Materials**") as the attorneys for Mark Nordlicht as an Intervenor once I then "execute the Protective Order."

I enclose herewith a copy of Ian Stoll's October 16, 2009 letter confirming the consent of the Plaintiffs' to Mark Nordlicht's Intervention, and I respectfully request that the Court authorize said appearance expeditiously so that I might have time to then "execute the Protective Order" and obtain the requested information and comment on it in Mark Nordlicht's behalf.

Respectfully submitted,

REGOSIN, EDWARDS, STONE & FEDER

By: ______________________
Saul E. Feder, Esq.

SEF/rc
Encl.
cc: Geoffrey M. Horn, Esq. (Sent by Fax to: 914-997-0035)
Bernard Persky, Esq, (Sent by Fax to: 212-818-0477)
Christopher S. Lovell, Esq. (Sent by Fax to: 212-719-4677 and by e-mail to: istoll@lshllp)com)
Douglas G. Thompson, Esq. (Sent by Fax to: 202-337-8090)
Steven R. Goldberg, Esq. (Sent by Fax to: 212-845-5102)
Robert B. Wolinsky, Esq. (Sent by Fax to: 202-637-5910)

MEMO ENDORSED 10/20/09

[illegible handwritten endorsement]

SO ORDERED:

Hon. Andrew Jay Peck
United States Magistrate Judge

BY ECF

LOVELL STEWART HALEBIAN LLP
ATTORNEYS AT LAW
61 BROADWAY, SUITE 501
NEW YORK, NEW YORK 10006
www.lshllp.com

TELEPHONE
(212) 608-1900

FACSIMILE
(212) 719-4775

October 16, 2009

*By Electronic Mail*
SFeder@resflaw.com

Saul E. Feder, Esq.
Regosin, Edwards, Stone & Feder
225 Broadway
New York, New York 10007

Re: *In re Natural Gas Commodity Litigation*, 03 CV 6186 (VM)(AJP)

Dear Mr. Feder:

We are writing in response to your letter of today's date.

Please note that we provided you with the Affirmation of Dr. Craig Pirrong, dated October 6, 2009 ("Pirrong Affirmation"), by email on October 14 and 15. We are again attaching a copy of the Pirrong Affirmation, annexed to Plaintiffs' Motion for Preliminary Approval of the Plan of Distribution, dated October 13, 2009.

Our reading of the Stipulation and Protective Order ("Protective Order") is that confidential materials shall only be provided to specified persons. See Protective Order, ¶ 2. A copy of the Protective Order is attached.

Co-Lead Counsel do not oppose your appearing on behalf of Mark Nordlicht as an intervening party. If and when he becomes an intervenor, Mr. Nordlicht and his counsel could execute the Protective Order (as did, for *e.g.*, Steven Goldberg and his client).

Thank you.

Sincerely,

Ian T. Stoll

**EXHIBIT "B"**

LAW OFFICES OF
REGOSIN, EDWARDS, STONE & FEDER
225 BROADWAY
NEW YORK, N.Y. 10007

DAVID REGOSIN (1931-1977)
PAUL J. EDWARDS (1944-1984)
ROBERT M. STONE
SAUL E. FEDER
ADAM H. STONE

TELEPHONE
(212) 619-1910
(212) 619-1990

FAX: (212) 964-9516
www.resflaw.com

October 20, 2009

Lovell, Stewart, Halebian, LLP
500 Fifth Avenue
New York, New York 10110
Attn: Christopher Lovell, Esq. and Ian Stahl, Esq.
Copy Sent by Fax to: (212) 719-4677

Re: Natural Gas Commodity Litigation
New York Southern District Court File No.: 03 CV 6186(VM)(AJP)
Hon. Victor Marrero, USDJ
Chief Magistrate Judge Andrew Peck

Gentlemen:

Thank you for your cooperation in allowing this firm to obtain Intervention status for our client Mark Nordlicht (Settlement Class Member Claimant # 600195) in the above Action. I'm enclosing to you herewith Hon Andrew J. Peck's October 20, 2009 Endorsed Order allowing us full access to all documents, information, data, reports, statistics and other writings as were heretofore unavailable to us as a result of the Confidentiality Order. I am also serving on you herewith this firm's formal Notice of Appearance for Mark Nordlicht, and our executed "Agreement to be Bound by Stipulation and Protective Order", in the form required therein.

Inasmuch as responses to your Motion are due by October 27, 2009, I'd appreciate your e-mailing to me by this afternoon the following,- as well as any and all other distributed Confidentiality documents which resulted in the formulation of the proposed Plan of Distribution annexed to your Motion, and/or the breakdown of Mark Nordlicht's claim and/or your or Rust Consulting's resultant allocation of Mark Nordlicht's entitlements:

(a) All of the Reports and Opinions you received from Mark Dwyer, PHD,- including, but not limited to the one dated October 23, 2006 referred to throughout your Memorandum, and his previous January 24, 2005 Declaration; and

(b) All of the Reports and Opinions you received from Dr. Craig Pirrong, including, but not limited to the one referred to in pages 11 through 14 of your Memorandum; and

(c) All of the Reports and Opinions you received from Dr. Michael Harris', including, but not limited to his October 23, 2006 Report as well as all of those other (if any) portions of "Dr. Harris' work, and other factors" upon which you relied,- as set forth on page 12 of your Memorandum; and

(d) All Opinions and Reports you received from your expert- Mr. Albert Helmig; and

(e) The (1) breakdown and calculations you and/or Rust Consulting created for Mark Nordlicht's Claim and the basis for and conclusions reached

Ex. "B"

which resulted in same; and (2) the resultant allocation of Mark Nordlicht's entitlements into the various categories and subdivisions in your proposed Plan of Distribution,- with the breakdown and calculations you and/or Rust Consulting created for Mark Nordlicht's entitlements and the basis for and conclusions reached which resulted in same

(f) All documents, reports, opinions and cases upon which you and/or Rust Consulting relied in deciding to propose:

(1) to distribute the 2006 Settlement Sums differently from the 2007 Settlement Sums; and

(2) to distribute almost all of the Settlement Sums to losses incurred in the first five days of each month rather that to the entire month's losses; and

(3) to treat losses from trades in Options for Futures Contracts substantially differently than losses from trades in Futures Contracts; and

(g) The (1) total dollar amount of all Claims received by you and Rust; (2) the total dollar amount of all Claims approved by you and or Rust,- and the categories of basis for rejection, reduction or modification [AND- IF ANY OF MARK NORDLICHT'S CLAIM WAS REJECTED, REDUCED OR MODIFIED,- THE BASIS FOR EACH PRTION OF HIS CLAIM THAT WAS REJECTED, REDUCED OR MODIFIED]; and (3) the total dollar amount of approved claims allocated by you and/or Rust into each of the proposed categories and subdivisions of the proposed Plan of Distribution.

I would greatly appreciate the courtesy of an immediate and detailed response to the inquiries raised herein.

Very truly yours,
REGOSIN, EDWARDS, STONE & FEDER

By: ______________________
Saul E. Feder, Esq. (SF 3524)

SEF/rc
Encl.
cc: Geoffrey M. Horn, Esq. (Sent by Fax to: 914-997-0035)
Bernard Persky, Esq, (Sent by Fax to: 212-818-0477)
Christopher S. Lovell, Esq. (Sent by Fax to: 212-719-4677 and by e-mail to: istoll@lshllp.com)
Douglas G. Thompson, Esq. (Sent by Fax to: 202-337-8090)
Steven R. Goldberg, Esq. (Sent by Fax to: 212-845-5102)
Robert B. Wolinsky, Esq. (Sent by Fax to: 202-637-5910)
Mr. Tom Faucher, Project Manager; Rust Consulting, Inc. (Sent by Fax to: 1(561) 651-7788)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:

Natural Gas Commodity Litigation

------------------------------------------------------------X

03 Civ 6186 (VM)(AJP)

**NOTICE OF APPEARANCE**

PLEASE TAKE NOTICE, that Mark Nordlicht (Settlement Class Member Claimant No. 600195) hereby appears in the above entitled Action, and that the undersigned has been retained as counsel for Mark Nordlicht, and hereby demands that all future papers be served upon the undersigned at the address stated below.

Dated: New York, New York
October 20, 2009

Saul E. Feder, Esq. (SF-3524)
REGOSIN, EDWARDS, STONE & FEDER, ESQS.
Attorneys for Mark Nordlicht
225 Broadway, Suite 613
New York, New York 10007
Tel #: (212) 616-1990
Fax #: (212) 964-9516
e-mail address: sfeder@resflaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:

Natural Gas Commodity Litigation

-----------------------------------------------------------X

03 Civ 6186 (VM)(AJP)

**AGREEMENT TO BE BOUND BY STIPULATION AND PROTECTIVE ORDER**

AGREEMENT TO BE BOUND BY STIPULATION AND PROTECTIVE ORDER

1. My name is Saul E. Feder, Esq. I am employed as a Partner by Regosin, Edwards, Stone & Feder, Esqs., 225 Broadway, Suite 613, New York, New York 10007.

2. I have received and read a copy of the Stipulation and Protective Order filed in *In Re: Natural Gas Commodity Litigation* (Master File No. 3 Civ. 6186 (VM)). I understand the provisions of the Stipulation and Protective Order, and agree to comply with, and to be bound by its provisions. I attest that the scope of my employment does not currently include the marketing of natural gas, or the direct supervision of any employee or employees whose duties include the marketing of natural gas. I hereby agree to not use any "Confidential" or "Restricted Confidential" Information obtained through this proceeding to give any other Party or any competitor or customer of any Party a commercial advantage or to otherwise disclose any such Information to anyone not authorized to receive it. I further agree that my use of any "Confidential" or "Restricted Confidential" Information obtained through this proceeding will be limited to my involvement in this proceeding. I agree to protect all Confidential Information and Restricted Confidential Information in my possession and maintain it in a secure place. I hereby agree to subject myself to the jurisdiction of the United States District Court for the Southern District of New York and understand that the Court may impose sanctions on me personally and/or on my employer for any violation of the Stipulation and Protective

Case 1:03-cv-06186-VM Document 544 Filed 10/20/2009 Page 2 of 2

Order. I further agree that upon termination of this action, or sooner if so requested, I shall return all Confidential and Restricted Confidential Information provided to me, including all copies and excerpts thereof, pursuant to the terms of the Stipulation and Protective Order.

Date: October 20, 2009

Saul E. Feder, Esq. (SF-3524)
Name (type or printed)

Signature

# EXHIBIT "C"

LAW OFFICES OF
REGOSIN, EDWARDS, STONE & FEDER
225 BROADWAY
NEW YORK, N.Y. 10007

DAVID REGOSIN (1931-1977)
PAUL J. EDWARDS (1944-1964)
ROBERT M. STONE
SAUL E. FEDER
ADAM H. STONE

TELEPHONE
(212) 619-1910
(212) 619-1990

FAX: (212) 964-9516
www.resflaw.com

October 22, 2009

Lovell, Stewart, Halebian, LLP
61 Broadway, Suite 501
New York, New York 10006
Attn: Christopher Lovell, Esq. and Ian Stoll, Esq.
Copy Sent by Fax to: (212) 719-4677; and
by e-mail to: istoll@lshllp.com; clovell@lshllp.com

Lowey Dannenberg Cohen & Hart, P.C.
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310
Attn: Geoffrey Horn, Esq.
Copies Sent by Fax to: 1(914) 997-0035 and
by e-mail to: ghorn@lowey.com

Re: Natural Gas Commodity Litigation
New York Southern District Court File No.: 03 CV 6186(VM)(AJP)
Hon. Victor Marrero, USDJ
Chief Magistrate Judge Andrew Peck

Gentlemen:

I have reviewed the enclosures e-mailed by you to me yesterday in response to the Order of Hon. Andrew J. Peck of October 20, 2009, and I acknowledge to you my appreciation for your having forwarded same to me. I note however that certain specific items requested by me have not been included,- including the following:

(a) Although you supplied another copy of Craig Pirrong's October 6, 2009 Affirmation,- you have still not supplied any of Dr. Craig Pirrong's Reports and Opinions,- as referred to you throughout your Memorandum,- including on pages 11 through 14 thereof; and

(b) Although you provided us the October 23, 2006 "Declaration" of Albert Helmig,- you have not provided us with any of his Opinions or Reports.

(c) You supplied me with the breakdown of the input of all of Mark Nordlicht's Trades in chronological order broken down by price; premium amount; etc.,- but you have omitted therefrom all of the following:

i. Totals for each column; and



ii. A "definition" of the letters you placed under the category "type" (F or C or P) or the letters you placed under the category "buy/sell" (PL or S or P),- making it impossible to understand their categories; and

(d) Most importantly,- you did not give your breakdown of the Trades done by Mark Nordlicht which are categorized by:

i. Futures Contracts Net Price Artificially paid;
ii. Options Transactions with Net Losses during the First Five Trading Days of each month;
iii. Net Options Losses during the entire Class Period;
iv. Net Options Volume during the First Five Trading Days of each month;
v. Those of his trades which are categorized as,- Class Members who were unable to submit sufficient transaction data to track all Futures Contracts.
vi. Those of his trades which are categorized as,- Futures Contracts Net Price Artificially paid resulting in Net Losses during the First Five Trading Days of each month;
vii. Those of his trades which are categorized as,- Futures Contracts Net Price Artificially paid resulting in Net Losses on Futures Contracts during the entire Class Period;
viii. Those of his trades which are categorized as,- Futures Contracts Net Price Artificially paid based on Volume of Future Trades during the First Five Trading Days of each month;
ix. His Options Losses during the First Five Trading Days of each month;
x. His Options Losses during the entire Class Period;
xi. His Options Volume during the First Five Trading Days of each month;

(e) Of course,- without the supplemental charts clearly created by you in order to place Settlement Class Members in each of those categories,- I cannot determine how you made allocations for Mark Nordlicht (or for any other Class Member). Please forward them to me!

(f) You've also not advised whether or not any of Mark Nordlicht's Trades or Losses were rejected for any reason,- and same cannot be determined from the chart given by you,- because of your intentional omission of any totals thereon.

(g) You also failed to supply the total dollar amount of all Claims received by you from all of the Claimants;- nor the total amount of all Claims received by you

which were approved to be included in the distribution of the Settlement Proceeds.

(h) Finally,- I also note that although you sent me three Charts of Future's Trades for the year 2006 you've supplied me with only one Chart (Futures Net Volume) for the year 2007.

(i) Further,- I note that although I received six Charts on Options' Trades none of them have captions sufficient for me to clearly and adequately determine what categories each Chart is intended to cover either for the years 2006 or 2007,- and I would appreciate your clarifying the captions that should go with each of the Charts for greater clarity.

I would greatly appreciate the courtesy of an immediate and detailed response to the requests set forth.

Very truly yours,

REGOSIN, EDWARDS, STONE & FEDER

By: ______________________
Saul E. Feder, Esq. (SF 3524)

SEF/rc
Encl.
cc: Bernard Persky, Esq, (Sent by Fax to: 212-818-0477)
Douglas G. Thompson, Esq. (Sent by Fax to: 202-337-8090)
Steven R. Goldberg, Esq. (Sent by Fax to: 212-845-5102)
Robert B. Wolinsky, Esq. (Sent by Fax to: 202-637-5910)
Mr. Tom Faucher, Project Manager; Rust Consulting, Inc.
(Sent by Fax to: 1(561) 651-7788)

# EXHIBIT "D"

**Saul Feder**

---

**From:** Geoffrey Horn [GHorn@lowey.com]
**Sent:** Friday, October 23, 2009 3:52 PM
**To:** Saul Feder
**Cc:** 'Ian T. Stoll, Esq.'; 'Christopher Lovell'; 'Bernie Persky'; 'Douglas Thompson'
**Subject:** Natural Gas
**Attachments:** 00098365.XLS; 00098304.XLS

Dear Mr. Feder:

We received your letter late yesterday requesting additional information and we are reviewing it.

Attached is a spreadsheet reflecting the current allocation under the 2007 Net Price Artificial Impact Futures allocation and a spreadsheet containing Professor Dwyer's net price distortions.

Geoffrey Horn

Geoffrey M. Horn
Lowey Dannenberg Cohen & Hart, P.C.
White Plains Plaza
One North Broadway
White Plains, NY 10601
Direct Dial (914) 733-7259
Main Office (914) 997-0500
Fax (914) 997-0035
ghorn@lowey.com

# EXHIBIT "E"



Dannenberg Cohen & Hart, P.C.

New York
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310
914-997-0500 Telephone
914-997-0035 Fax
www.lowey.com

Pennsylvania
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428-2977
610-941-2760 Telephone
610-862-9777 Fax

October 26, 2009

VIA E-MAIL
Saul E. Feder, Esq.
Regosin, Edwards, Stone & Feder
225 Broadway
New York, NY 10007

**Re:** ***In re Natural Gas Antitrust Litigation***

Dear Mr. Feder:

We are responding to your letter dated October 22, 2009, requesting additional information related to Mark Nordlicht's claim and the proposed plan of allocation.

Request (a): You have Dr. Pirrong's affirmation. This is the only written report prepared by Dr. Pirrong in this action. Note that Plaintiffs' Memorandum In Support of Their Motion for Preliminary Approval of Proposed Plan of Allocation does not refer to any other "Report" by Professor Pirrong.

Request (b): Albert Helmig's October 23, 2006 Declaration is his only written submission in this action.

Request (c): Concerning the Microsoft Excel spreadsheet we provided you containing a breakdown of all natural gas futures and options transactions submitted by Mark Nordlicht, you have asked for:

i. Totals for each column. In response, we note that the data was provided in a Microsoft Excel format which easily allows a user to total any series of cells contained therein. If there are specific columns you would like totaled, please let us know.

ii. A definition of the letters defining certain category types (F, C, or P). In response, F means future, C means call, and P means put. The term PL is an internal code created by the claims administrator and indicates that the transaction data submitted by a claimant only reflects liquidation of futures transactions on a particular day and the resulting profit or loss (hence "PL") and does not include date or price at initiation of the positions. The results on a particular day can be seen Debit and Credit columns of the spreadsheet.





Request (d): You have asked us to identify which of the trades submitted by Mark Nordlicht are eligible for certain distribution criteria under the proposed plan of allocation.

Request (d)(i): No futures trades submitted by Mr. Nordlicht are eligible under the 2007 Judgment Futures Contract Net Price Artificiality.

Requests (d) (ii), (iii), (iv), (ix), (x), and (xi): These six requests (note that requests ii. and ix., iii. and x., and iv. and xi. are identical) ask us to identify those options trades submitted by Mr. Nordlicht that are eligible under the proposed plan of allocation. The spreadsheet we provided you containing Mr. Nordlicht's submitted transactions reflects the results of each options allocation. Pursuant to the proposed plan of allocation, Net Options Losses, whether for first five trading days or the entire class period, are determined by the "cash-in/cash out" method. Cash paid for the purchase of an option is netted against cash received for the sale of an option during the first five trading days of the month or during the entire class period. For example, to determine Mr. Nordlicht's Net Options Loss for the entire period reflecting the transactions submitted, simply total the entries for all option transactions on the spreadsheet. As options volume first five trading days, it is the sum of all options positions traded during the first five trading days of each month whether or not the position was opened long or short, or was an initiating or closing transaction. It is much like the Net Options Loss first five days but uses volume instead of dollars as the unit of measure to be processed through the proposed plan of allocation.

Request (d) (v): The futures trade data submitted by Mr. Nordlicht was insufficient to allow the claims administrator to track his futures contract purchases and sales by date. See Response to Request (c).

Requests (d) (vi), (vii), and (viii): We cannot respond to these three requests as written. You have merged that part of the 2007 Judgment plan of allocation portion based on the Futures Contract Net Price Artificiality, with the three separate futures distribution groups within the 2006 Judgment. They are unrelated and do not impact each other's results.

Request (e): Any allocations made to Mr. Nordlicht based on his submitted transactions follow the proposed plan of allocation. The claims administrator's database takes the data pull that we have provided you and applies the terms of each part of the plan of allocation to each claimant's transaction data and creates the results we have sent to you in redacted form (Claimant names withheld).

Request (f): At this point, none of Mr. Nordlicht's submitted data has been rejected. However, the final audit process is not complete.

 Dannenberg Cohen & Hart, P.C.

Request (g): You state that we have not provided "the total dollar amount of all Claims received by you from all of the Claimants, nor the total amount of all Claims received by you which were approved to be included in the distribution of the Settlement Proceeds." We have provided you with redacted results for each category under the plan of allocation. We cannot respond further as it is unclear what you mean by the term "Claims" in the context of your request. If you mean a net futures loss, that has been provided.

Request (h): We have provided you six spreadsheets relating to the 2006 Judgment (three for futures and three for options) and five spreadsheets for the 2007 Judgment (three for options and two for futures). This is the entire group of spreadsheets.

Request (i): Each options spreadsheet does contain self-identifying information. For your convenience, here is a list:

00098285.XLS: 2007 Net Options Loss First Five Trading Days; 00098286.XLS: 2007 Net Options Loss Entire Period; 00098287.XLS: 2007 Net Options Volume First Five Trading Days; 00098288.XLS: 2006 Net Options Loss First Five Trading Days; 00098289.XLS: 2006 Net Options Loss Entire Period; 00098290.XLS: 2006 Net Options Volume First Five Trading Days.

Very Truly Yours,

Geoffrey M. Horn

GMH:tc

# EXHIBIT "F"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
IN RE: NATURAL GAS
COMMODITY LITIGATION
---------------------------------------------------------------x
THIS DOCUMENT RELATES TO
ALL ACTIONS
---------------------------------------------------------------x

Master File No. **03 CV 6186(VM)(AJP)**

ECF Case

**Hon. Victor Marrero, USDJ**

**OUTLINE SUMMARIZATION PREPARED BY SAUL E. FEDER, ESQ. OF PLAINTIFFS' INITIAL OCTOBER 6, 2009 PROPOSED PLAN OF DISTRIBUTION**

**Summarization of Underlying Factual Information:**

A. **Amount of Judgments: The May 24, 2006 Judgment totaled $72,762,500.00; the June 15, 2007 Judgment totaled $28,087,500.00.**

B. **2006 Net "Settlement Funds": approximately $46,130,000.00 (after deducting legal fees and expenses)**

C. **2007 Net "Settlement Funds": approximately $17,975,000.00 (after deducting legal fees and expenses)**

D. **The Settlement Class consists of: "All persons who purchased, sold, settled or otherwise traded NYMEX Natural Gas Contracts" during the applicable period.**

E. **Total Claimants: 917,- which included a total of 1,886 Distinct Trading Accounts**

F. **Potential Eligible Claims: 52.7 million Natural Gas Futures Contracts; and more than 16 million Options on Natural Gas Futures Contracts (approximately 43.8% of all NYMEX Natural Futures Contracts; and 33% of all NYMEX Natural Gas Options Contracts traded during the Class Period).**

G. **Class Period: June 1, 1999 through December 31, 2002**

H. **The Plan provides for different methods of payment,- and asserts that they "shall be additive, not alternative"**

**Distribution of 2007 Net Settlement Fund:**

| 90% | 5% | | | 5% |
|---|---|---|---|---|
| 90% of the Settlement Fund will go to Class Members with "Futures Contract Net Price Artificially Paid",- as follows; | 5% of the Settlement Fund will go to Class Members with Options transactions,- as follows: | | | 5% will go to Class Members who were unable to submit transaction data sufficient to be able to track all Future Contract purchases and sales by date. |
| This 90% will be multiplied by a | (a) 55% on the basis of Net | (b) 22.5% on | (c) 22.5% on | The calculation |

Ex "F"

| | | | | |
|---|---|---|---|---|
| fraction in which the numerator is the Members' Recognized "Impact Claim"; and the denominator is the total sum of all eligible Class Members Recognized "Impact Claims". | Options Losses during the first five trading days of each month. | the basis of Net Options Losses during the entire Class period. | the basis of Net Options Volume during the first five trading days of each month. | is based on Volume over the Class Period. |
| Class Members "Recognized Impact Claims" are determined by,- multiplying the daily amounts of "Artificiality" by the Member's purchases and sales on that day,- and then netting the total "Artificiality" received on all days against the total "Artificiality" paid on all days. | The 55% portion of the 5% allocated to Net Options Losses is calculated by a fraction of which the numerator is the Claimant's Net Options Losses during the first five days of the month and the denominator of which is the total of all Net Options Losses during those five days for all eligible Class Members | This 22.5% portion of the 5% allocated to Options Losses is calculated by a fraction of which the numerator its Claimant's Net Options Losses during the entire Class period and denominator of which is the total sum of all Net Options Losses for all Class Members. | This 22.5% portion of the 5% allocated Options Losses is calculated by a fraction of which the numerator is the Claimant's Net Options Volume during the first five days of each month and the denominator of which is the total sum of all Net Options Volume during the first five days of the month for all of the Class Members during that period. | |
| However,- all Settlement Class Members who are "hedgers will be paid only 40% of the product resulting therefrom; and those Class Members who are "swap dealers" will be paid only 25% of the product resulting therefrom. | Net Options Losses is determined by the "cash-in/cash-out" accounting method. Cash paid for the purchase of an Option is netted against cash received for the sale of that Option. If the Cash Paid exceeds the Cash Received,- then the Claimant has a Net Options Loss. | | | |
| Note that,- the absolute values of (a) all negative artificiality purchased and (b) all positive artificiality sold,- are added together without regard to their positive or negative signs! This total is the Class Members "Positive Impact". | Commercial "hedgers" only get 40% of the foregoing; and "swap dealers" only get 25% of the foregoing. | | | |
| Similarly the absolute values of (a) the positive "Artificiality" purchased and (b) the negative "Artificiality" sold,- are | In calculating the "cash-in/cash-out" method,- Options that expire or are assigned or | | | |

| | | | | |
|---|---|---|---|---|
| also added together without regard to their positive or negative signs,- and the total of those absolute values equals each Class Members "Gross Injury" | exercised are deemed to have "no value". | | | |
| EACH CLASS MEMBER'S "POSITIVE IMPACT" IS THEN SUBTRACTED FROM HIS "GROSS INJURY." IF THE REMAINDER IS POSITIVE THAT IS THE CLASS MEMBER'S "RECOGNIZED IMPACT CLAIM." IF THE REMAINDER IS "0" OR A NEGATIVE NUMBER,- THEN THE CLASS MEMBER HAS NO RECOGNIZED IMPACT CLAIM! | If the Option was converted for a Future's Contract through assignment or exercise,- the resulting gains/loss is included in the calculation of gains/losses on the Future's Contracts,- providing the Futures Contract is closed out within the same five day period or within the entire Class Period. Options that remain open at the end of the Class Period are assigned a cash-in or cash-out value at the time they were opened, and no market value at the end of the Class period. | | | |
| The daily amounts of "Artificiality" are available on the web at www.naturalgascase.com | "Net Options Volume" is the same total of all Options positions opened during the first five days of each month,- whether or not the position was opened long or short,- or whether or not the position was closed within the five days. | | | |

## Distribution of the 2006 Net Settlement Fund:

| 95% | | | | 5% | | |
|---|---|---|---|---|---|---|
| 95% of the Settlement Fund will go to Class Members with "Futures Contract Net Price Artificially Paid",- as follows; | | | | 5% of the Settlement Fund will go to Class Members with Options transactions,- as follows: | | |
| (a) 50% on the basis of Net Losses on Futures Contracts during the first five (trading) days of each month. | (b) 22.5% on the basis of Net Losses on Futures Contracts during the entire Class period. | (c) 22.5% on the basis of Net Volume of Futures Trades during the first five (trading) days of each month. | | (a) 55% on the basis of Net Options Losses during the first five trading days of each month. | (b) 22.5% on the basis of Net Options Losses during the entire Class period. | (c) 22.5% on the basis of Net Options Volume during the first five trading days of each month. |
| This 50% portion allocated to Losses on Futures Contracts is calculated by a fraction of which the numerator is the | This 22.5% portion allocated to Losses on Futures Contracts is calculated by a fraction of which the numerator its | This 22.5% portion allocated to Losses on Futures Contracts is calculated by a fraction of which the numerator is | | The 55% portion of the 5% allocated to Net Options Losses is calculated by a fraction of which the numerator is the Claimant's Net Options Losses during the first five days of the | This 22.5% portion of the 5% allocated to Options Losses is calculated | This 22.5% portion of the 5% allocated Options Losses is calculated by a fraction of |

| | | | | | | |
|---|---|---|---|---|---|---|
| Claimant's Net Futures Losses during the first five days of the month and the denominator of which is the total of all Net Futures Losses during those five days for all eligible Class Members | Claimant's Net Futures Losses during the entire Class period and denominator of which is the total sum of all Net Futures Losses for all Class Members. | the Claimant's Net Futures Volume during the first five days of each month and the denominator of which is the total sum of all Net Futures "Losses" (Volume) during the first five days of the month for all of the Class Members during that period. | | month and the denominator of which is the total of all Net Options Losses during those five days for all eligible Class Members | by a fraction of which the numerator its Claimant's Net Options Losses during the entire Class period and denominator of which is the total sum of all Net Options Losses for all Class Members. | which the numerator is the Claimant's Net Options Volume during the first five days of each month and the denominator of which is the total sum of all Net Options Volume during the first five days of the month for all of the Class Members during that period. |
| Net Futures Losses during the "first five days" is computed as "the net result of all Claimant's Futures transactions liquidated in the first five trading days of each month during the Class Period." They also provide that the "determination of the Settlement Administrator shall be final!" | Net Futures Losses during the entire Class period is determined as "the net result of all Claimant's Futures transactions liquidated during the Class Period." | | | Net Options Losses is determined by the "cash-in/cash-out" accounting method. Cash paid for the purchase of an Option is netted against cash received for the sale of that Option. If the Cash Paid exceeds the Cash Received,- then the Claimant has a Net Options Loss. | | |
| Commercial "hedgers" only get 40% of the foregoing; and "swap dealers" only get 25% of the foregoing. | Commercial "hedgers" only get 40% of the foregoing; and "swap dealers" only get 25% of the foregoing. | Commercial "hedgers" only get 40% of the foregoing; and "swap dealers" only get 25% of the foregoing. | | Commercial "hedgers" only get 40% of the foregoing; and "swap dealers" only get 25% of the foregoing. | | |
| | | "Net Futures Volume" is computed by netting all Buys" during the first five | | In calculating the "cash-in/cash-out" method,- Options that expire or are assigned or exercised are deemed to have "no value". | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | day trading periods (of each month),- against "all sales executed during each first five trading period." | | | | |
| | | For Claimants whose trading records do not contain sufficient data to determine if a liquidated position was initiated during the "first five day" period,- their "net volume" is calculated as "the sum of all Futures transactions liquidated during the first five trading days of each month multiplied by .05" Once again, they provide that the "determination of the Settlement Administrator shall be final!" | | If the Option was converted for a Future's Contract through assignment or exercise,- the resulting gains/loss is included in the calculation of gains/losses on the Future's Contracts,- providing the Futures Contract is closed out within the same five day period or within the entire Class Period. Options that remain open at the end of the Class Period are assigned a cash-in or cash-out value at the time they were opened, and no market value at the end of the Class period. | | |
| | | | | "Net Options Volume" is the same total of all Options positions opened during the first five days of each month,- whether or not the position was opened long or short,- or whether or not the position was closed within the five days. | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

File No. 03 CV 6186(VM)(AJP)

In re:

National Gas Commodity Litigation

Defendant.

**NOTICE OF CROSS MOTION FOR INTERVENTION**

LAW OFFICES OF
Regosin Edwards Stone & Feder
*Attorney for Intervenor MARK NORDLICHT*
*Office and Post Office Address, Telephone*
**225 Broadway, Suite 613**
**New York, New York 10007**
**(212) 619-1990**
**(212) 619-1910**

**PLEASE TAKE NOTICE:**

❑ NOTICE OF ENTRY
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on

2009

❑ NOTICE OF SETTLEMENT
that an order of which the within is a true copy
will be presented for settlement to the HON. one of the judges of the
within named Court, at
on at M.

Dated,

Yours, etc.

REGOSIN EDWARDS STONE & FEDER